[Cite as *State v. Figueroa*, 2020-Ohio-1328.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-P-0079** |
| JOHN L. FIGUEROA, II, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division.
Case No. 2018 CRB 00849.

Judgment: Affirmed in part and reversed in part; remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Shubhra N. Agarwal*, 3732 Fishcreek Road, Suite 288, Stow, OH 44224 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, John L. Figueroa II, appeals from the July 5, 2019 sentencing entry of the Portage County Municipal Court, Ravenna Division. For the reasons that follow, the entry of conviction is affirmed in part and reversed in part. The sentence imposed is upheld, but the matter is remanded for the state of Ohio to elect which allied offense survives merger.

{¶2} On March 27, 2018, a complaint was filed against appellant accusing him of obstructing official business and making a false police report incriminating a Deputy Sheriff of theft. Three misdemeanors were listed in the complaint—Falsification (M1) in violation of R.C. 2921.13(A)(2); Falsification (M1) in violation of R.C. 2921.13(B); and Obstructing Official Business (M2) in violation of R.C. 2921.31(A).

{¶3} A bench trial was held June 17-18, 2019. The charge of Obstructing Official Business was dismissed upon the state of Ohio's motion. In a June 19, 2019 judgment entry, the trial court found appellant "guilty beyond a reasonable doubt of falsification pursuant to Ohio Revised Code 2921.13(A)(2) and a second count of falsification pursuant to Ohio Revised Code 2921.13(B)."

{¶4} Sentencing was held July 5, 2019. After hearing from counsel and addressing appellant, the court stated: "And we are just going to pure and simple go on to sentencing. And my sentence is a $1,000 fine and court costs, 180 days in jail, credit for 30 days served. I'm going to suspend $800 of the fine. You are to commit no violation of law for two years and your sentence starts today." The prosecutor inquired, "Judge, I assume for purposes of the sentencing entry, the two charges merge for purposes of sentencing?" The court affirmed, "I did merge those."

{¶5} The trial court issued a form judgment entry of sentence, from which appellant now appeals. Appellant raises five assignments of error for our review:

> [1.] Mr. Figueroa's entry of conviction is not a final, appealable order.
>
> [2.] The trial court committed reversible error when it overruled Mr. Figueroa's Crim.R. 29(A) motion for acquittal because the evidence was insufficient to support a conviction.

2

[3.] Mr. Figueroa's conviction of falsification was against the manifest weight of the evidence.

[4.] The trial court committed reversible and plain error when it sentenced Mr. Figueroa without having the State elect which count of falsification will be merged into the other for the purpose of sentencing.

[5.] Mr. Figueroa was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to argue that the prosecutor did not elect what count of falsification will be merged for purposes of sentencing.

{¶6} Appellee, the state of Ohio, responded to only the first assignment of error.

**Final, Appealable Order**

{¶7} As his first assignment of error, appellant asserts the trial court's entry of conviction is not a final, appealable order because it fails to comply with Crim.R. 32(C). The state agrees. We disagree, however, with both parties. The trial court's entry of conviction complies with Crim.R. 32(C) and is a final, appealable order.

{¶8} Pursuant to Crim.R. 32(C), "A judgment of conviction shall set forth the fact of conviction and the sentence. * * * The judge shall sign the judgment and the clerk shall enter it on the journal."

{¶9} "Crim.R. 32(C) clearly specifies the substantive requirements that must be included within a judgment entry of conviction to make it final for purposes of appeal[.]" *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, ¶11. These substantive requirements are "(1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *Id.* at ¶14, modifying *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330.

3

{¶10} "In contrast, when the substantive provisions of Crim.R. 32(C) are contained in the judgment of conviction, the trial court's omission of *how* the defendant's conviction was effected, i.e., the 'manner of conviction,' does not prevent the judgment of conviction from being an order that is final and subject to appeal." *Id.* at ¶12 (emphasis added).

{¶11} Here, the sentencing entry correctly sets forth the *fact* of conviction but incorrectly designates the *manner* of conviction. Rather than indicating that the trial court made a finding of guilty beyond a reasonable doubt, it indicates appellant pled guilty. Appellant admits this mistake does not affect the finality of the order. *See id.* at ¶12.

{¶12} Rather, appellant argues the finality of the order is affected by (1) the omission of the particular section of the Revised Code and level of offense of which he was convicted and (2) the failure to note which count of Falsification survived merger for purposes of sentencing. Neither of these, however, are substantive requirements of a final and appealable entry of conviction under Crim.R. 32(C).

{¶13} First, this court has previously held that "there is no requirement that the trial court indicate on a sentencing entry the exact section numbers of the revised code the defendant has been found guilty of violating." *Mentor v. Molk*, 11th Dist. Lake No. 2010-L-112, 2011-Ohio-3120, ¶18. Thus, as omitting this information is not error, the failure to include it certainly does not affect the finality of the order. There is no argument or any indication from the record that appellant was unaware of the charges against him, the revised code sections and level of those offenses, and the charges of which he was found guilty. This information was included, among other places, in the complaint filed against appellant, as well as the judgment entered with the trial court's finding of guilt.

4

{¶14}   Second, the sentencing entry states the fact of conviction and sentence for only one offense.   The form entry indicates two counts of Falsification were merged: "falsification x 2, merge."   And only one sentence was imposed, according to the form entry: "$1,000 Fine, X Costs"; "180 days in jail. Credit for 30 days served"; "$800 of the fine suspended upon conditions below"; "Defendant commits no violation of law for 2 years."   Accordingly, any error regarding merger in this case does not affect the finality of the sentencing entry.

{¶15}   "[T]he purpose of Crim.R. 32(C) is to ensure that a defendant is on notice concerning when a final judgment has been entered and the time for filing an appeal has begun to run."   *Lester, supra,* at ¶10, citing *State v. Tripodo,* 50 Ohio St.2d 124, 127 (1977).   There is no concern here that appellant did not receive notice of when the time for filing his appeal began to run.  He was served with the entry and received appointment of counsel, who timely appealed and now raises alleged errors—but not jurisdictional issues—with regard to the proceedings below.

{¶16}   Although it contains errors, the July 5, 2019 sentencing entry is a final, appealable order.

{¶17}   Appellant's first assignment of error is without merit.

**Motion for Acquittal**

{¶18}   Under his second assignment of error, appellant argues the trial court erred when it overruled his Crim.R. 29(A) motion for acquittal.

{¶19}   Pursuant to Crim.R. 29(A), "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment

5

of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

{¶20} Crim.R. 29(A) requires the trial court to grant a motion for judgment of acquittal if the evidence is insufficient to sustain a conviction on the charged offense(s). "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 & 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶21} Count One of the complaint alleges a violation of R.C. 2921.13(A)(2), which provides: "No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when * * * [t]he statement is made with purpose to incriminate another." The complaint accurately recites the statutory language and specifically alleges that "John Figueroa II made a false police report incriminating a Deputy Sheriff in the State of Ohio."

{¶22} Count Two of the complaint alleges a violation of R.C. 2921.13(B), which provides: "No person, in connection with the purchase of a firearm * * * shall knowingly furnish to the seller of the firearm a fictitious or altered driver's or commercial driver's license or permit, a fictitious or altered identification card, or any other document that contains false information about the purchaser's identity."

{¶23} This is clearly a clerical error, as the statutory language recited in the complaint is found in R.C. 2921.15(B): "No person shall knowingly file a complaint against a peace officer that alleges that the peace officer engaged in misconduct in the performance of the officer's duties if the person knows that the allegation is false."

6

Specifically, the complaint alleges that "John Figueroa II made a false police report incriminating a Deputy Sheriff in the State of Ohio of theft."

{¶24} On appeal, appellant argues the trial court should have granted his Crim.R. 29(A) motion because no evidence was presented to support a violation of R.C. 2921.13(B). We disagree with the premise of this argument.

{¶25} First, the complaint sufficiently informed appellant of the nature of the charges against him in order to prepare a defense. Although the code section was incorrect by one number, the proper language of the offense was plainly stated in the body of the complaint. Appellant was undoubtedly on notice that he was charged with making a false allegation of peace officer misconduct. *See State v. Mays*, 104 Ohio App.3d 241 (2d Dist.1995); *State v. Holloway*, 1st Dist. Hamilton No. C-970067, 1998 WL 57793, *1 (Feb. 13, 1998).

{¶26} Second, the clerical error did not prejudice appellant in any way. He does not contend that he lacked sufficient information to prepare a defense or that he prepared a defense for the incorrect code section. He also does not contend that he was tried under the incorrect code section. Prior to trial, the prosecutor informed the court on the record that the plea offer made to appellant was that the state would dismiss the remaining charges if appellant pled guilty to making a false allegation of peace officer misconduct. Further, before the state's case-in-chief, the trial court stated: "One last thing. I just want to make sure that we are all of the understanding that we are going forward today on Count 1, falsification, a misdemeanor of the first degree; obstructing official business, a misdemeanor of the second degree; and making false allegations of peace officer misconduct, a misdemeanor of the first degree."

7

{¶27} Finally, appellant did not move for acquittal on the incorrect code section. Defense counsel argued, "I would contend that the State has failed to show beyond a reasonable doubt that Mr. Figueroa knowingly filed a statement or swore or affirmed the truth of a statement that was false with the purpose to incriminate another, and I don't think the State has shown beyond a reasonable doubt that he made a complaint against a peace officer knowingly that alleges the peace officer engaged in misconduct when he knows the statement to be false." Because the motion for acquittal was made with regard to R.C. 2921.15(B)—which is clearly the code section upon which appellant was charged, tried, and convicted—we cannot review his argument that there was insufficient evidence to support a conviction under R.C. 2921.13(B).

{¶28} Appellant's argument is not well taken.

**Sufficiency and Manifest Weight of the Evidence**

{¶29} Appellant further argues, under his second and third assignments of error, that both of his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶30} "With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process." *Id.*

8

at 386-387, citing *State v. Robinson*, 162 Ohio St. 486 (1955) and *Tibbs v. Florida*, 457 U.S. 31, 45 (1982).

{¶31} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Thompkins*, *supra*, at 387 (emphasis sic), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

> 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'

*Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs*, *supra*, at 42.

{¶32} Deputy Robert Clouden Jr. of the Portage County Sheriff's Office testified that on July 28, 2017, he initiated a traffic stop of appellant for a registration violation. Upon conducting a consensual search of appellant's person, Deputy Clouden located a black pouch approximately four inches thick and the length of a standard envelope. The pouch contained a large amount of U.S. currency, mostly in five- and ten-dollar bills. Appellant informed Deputy Clouden that he did not know how much money was in the pouch. The money in the pouch was not counted at the scene. The pouch was placed

9

on the hood of the cruiser during the stop. Appellant also had $100.00 in his pocket and $60.00 in his wallet. A small amount of cocaine was found in the vehicle.

{¶33} Appellant was arrested. The money was seized under suspicion of illegal drug trafficking. The dash cam video of the traffic stop and arrest was introduced at trial.[1]

{¶34} Deputy Clouden placed the black pouch in an evidence bag, set the bag on the front passenger side floor of his cruiser, and transported it directly to the police station.

{¶35} Detective Springer assisted Deputy Clouden with counting the money in the black pouch, and Detective Centa assisted him with counting the money in the wallet. Deputy Clouden testified that a total of $2,440.00 had been found on appellant—$160.00 in the wallet and pocket, and $2,280.00 in the black pouch. The verified currency sheets and photos of the money were introduced at trial. Deputy Clouden placed the money back in the black pouch, sealed the pouch in an evidence bag, and placed the bag in an evidence locker. Deputy Clouden did not see the money again after that point. The only other time he saw the black pouch was at appellant's trial stemming from the traffic stop, at which appellant was found "not guilty."

{¶36} Deputy Clouden was later informed that, at a forfeiture hearing, appellant alleged there was more money in the pouch than had been seized. Deputy Clouden testified that he reported the allegation to Lieutenant Gregory Johnson that same day.

{¶37} Lieutenant Johnson testified that on March 1, 2018, appellant lodged a formal written complaint against Deputy Clouden at the sheriff's office, alleging there was approximately $22,000.00 missing when the deputy logged appellant's money into

---

1. Any reference to exhibits admitted at trial are taken from the transcript of proceedings. The exhibits were not included with the record on appeal nor are they necessary to rule on the merits of appellant's assignments of error.

evidence. Lieutenant Johnson conducted a recorded interview of appellant, which was introduced at trial. Lieutenant Johnson testified that appellant reported he had won $20,000.00 in the lottery and had a total of $24,440.00 in cash on his person at the time of his arrest. Appellant also claimed that the money Deputy Clouden submitted into evidence was not any of the money seized. Appellant told the lieutenant that he had purchased forty $1.00 tickets for the Pick 3 lottery from various locations on July 26, 2017, all with the winning number "8-5-6." Appellant said he had won $500.00 on each ticket and cashed the tickets at more than one location in the Kent/Brimfield area on July 27 and July 28. He was unable to provide the specific locations of purchase or redemption and said that no one accompanied him.

{¶38} Lieutenant Johnson reviewed the photographs of the seized money, the wallet, the pouch, and the verified currency sheets. He testified that nothing seemed out of the ordinary with how it was collected and counted by Deputy Clouden and the detectives.

{¶39} Justin Morris, an investigator with the State of Ohio Lottery Commission, was contacted by the Portage County Sheriff's Office in March 2018. Morris testified that the winning numbers of the evening Pick 3 drawing on July 26, 2017, were "8-5-6"; there were 84 total winners, only 35 of which were for a $1.00 straight bet. The total prize amount for all 35 straight bet tickets would have been $17,500.00. On July 27 and July 28, 2017, 13 winning tickets were cashed, only two of which were cashed in Portage County at an Acme location in Kent. Neither of those two tickets were for $1.00 straight bets. Morris testified that he was unable to substantiate the claim that a person had won $20,000.00 on July 26, 2017, by playing the Pick 3 with straight $1.00 bets. He also did

11

not have information as to how many winning tickets were cashed in surrounding Stark or Summit Counties, or how many of the 35 tickets had played the winning bet more than one time. The reports Morris relied on for his testimony were introduced at trial.

{¶40} Detective Eric Centa testified that he took over the investigation from Lieutenant Johnson. He obtained a search warrant for appellant's cell phone records and GPS data for July 26-July 28, 2017. Detective Centa generated a map, which was introduced at trial. Appellant's phone records indicated that he had used his phone at four locations in Portage County on July 27 and July 28, but none of these four locations was an Acme store in Kent. Detective Centa determined that appellant's allegations against Deputy Clouden were false, and appellant was arrested.

{¶41} Appellant argues his convictions cannot stand because once it was determined that his claim of where the money came from could not be authenticated, appellant was not questioned as to whether the money had come from another source and Deputy Clouden was not investigated to determine whether the allegation against him was, in fact, false.

{¶42} Again, appellant was convicted of violating the following criminal statutes:

> R.C. 2921.13(A)(2): "No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when * * * [t]he statement is made with purpose to incriminate another."

> R.C. 2921.15(B): "No person shall knowingly file a complaint against a peace officer that alleges that the peace officer engaged in misconduct in the performance of the officer's duties if the person knows that the allegation is false."

{¶43} The weight of the evidence supports the conclusion that, at the very least, appellant's statement that the alleged missing money was lottery winnings from July 26,

12

2017, was false. There is no question that this false statement was made with the purpose to incriminate Deputy Clouden of theft. Therefore, the court, sitting as the trier of fact, did not clearly lose its way or create a manifest miscarriage of justice in finding appellant guilty of Falsification, pursuant to R.C. 2921.13(A)(2).

{¶44} Appellant's conviction for Making False Allegations of Peace Officer Misconduct, pursuant to R.C. 2921.15(B), presents a more difficult question. It was proven that appellant's statement regarding the source of the alleged missing money was false. The issue here, however, is whether it was proven that the allegation that Deputy Clouden stole that money was false—regardless of how appellant came into possession of the alleged missing money.

{¶45} The basis of appellant's argument is that Deputy Clouden admitted the following: there were times he was not in the frame of the dash cam video for minutes at a time; the internal recording system in the cruiser does not show the front passenger seat or the floorboard where the money was placed; he had control of the camera in his cruiser; there were times when he was alone with the money; and at no point was he searched to see if there was any more money in the cruiser or on his person. However, Deputy Clouden also testified to the following: he never found more than $2,280.00 in the black pouch; he did not seize more than $2,440.00 from appellant; he never found $20,000.00 in the pouch or anywhere else during the stop; he never found $24,440 in the pouch; and from his observation, that amount of money could not have fit in the pouch.

{¶46} Additionally, appellant notes Detective Centa admitted that once he determined appellant's claim as to where the money came from was false, he did not investigate Deputy Clouden: "It never got to that point of having to investigate that Deputy

13

Clouden took it or not." Detective Centa did not subpoena Deputy Clouden's bank records; he did not interrogate or interview him; and he did not check if the deputy had purchased any vehicles or vacations recently, because, as the detective testified, "I'm friends with him and I know he hadn't." Detective Centa also never questioned appellant as to the possibility that the money came from another source.

{¶47} The state provided sufficient evidence, in the form of Deputy Clouden's testimony, to support appellant's conviction of Making a False Allegation of Peace Officer Misconduct. We further conclude that the conviction is not against the manifest weight of the evidence. The issue to be decided here was one of credibility: was appellant's allegation reliable? was Detective Centa's investigation biased? was Deputy Clouden's testimony truthful? These are questions properly suited for the trier of fact, and we do not discern a manifest miscarriage of justice in the trier's determination. It was shown that appellant did lie about the source of the money, that Deputy Clouden followed protocol in logging the money into evidence, and that the detectives found absolutely no basis upon which to conduct a further investigation.

{¶48} Appellant's second and third assignments of error are without merit.

**Merger and Election by the State**

{¶49} As his fourth assignment of error, appellant contends the trial court committed plain error when it sentenced him without first having the state elect which count was to survive merger for purposes of sentencing. Appellant further argues, under his fifth assignment of error, that he was denied his constitutional right to effective

14

assistance of counsel when trial counsel failed to object to the state's failure to elect at sentencing.

{¶50} In Ohio, double jeopardy protections are codified in R.C. 2941.25. "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A).

{¶51} "[W]hen a trial court concludes that an accused has in fact been found guilty of allied offenses of similar import, it cannot impose a separate sentence for each offense. Rather, the court has a mandatory duty to merge the allied offenses by imposing a single sentence, and the imposition of separate sentences for those offenses—even if imposed concurrently—is contrary to law because of the mandate of R.C. 2941.25(A)." *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, ¶28.

{¶52} The Supreme Court of Ohio has further stated that, although R.C. 2941.25 does not expressly provide that the state must elect which allied offense to pursue for sentencing, "[t]he General Assembly has made clear that it is *the state* that chooses which of the allied offenses to pursue at sentencing, and it may choose any of the allied offenses." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶20 (emphasis added), citing *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶16 & ¶43, citing *Maumee v. Geiger*, 45 Ohio St.2d 238, 244 (1976); Legislative Service Commission Summary of Am.Sub.H.B. No. 511, The New Ohio Criminal Code (June 1973) 69. We agree with the Tenth Appellate District, which has stated that "[o]ur reading of *Whitfield* also convinces us that the right to elect the charge to pursue for sentencing is a right belonging to the state of Ohio, not the offender." *State v. Cruz-Altunar*, 10th Dist. Franklin No. 18AP-951,

15

2019-Ohio-2298, ¶26.

{¶53} Here, the trial court did not violate the mandate of R.C. 2941.25(A). Nor did it implicate double jeopardy concerns. The trial court very clearly merged the two offenses by imposing a single sentence. The act of which appellant complains is the state's failure to identify which offense survived merger for purposes of imposing the single sentence.

{¶54} We conclude that this matter must be remanded to the trial court in order for the state to elect which allied offense it wishes to survive merger for purposes of the imposed sentence.

{¶55} However, appellant cannot demonstrate that his trial counsel was ineffective for failing to object to the state's failure to elect at sentencing. Appellant was found guilty of two first-degree misdemeanors. For either offense, the trial court was only permitted to impose a jail term of not more than 180 days, community control for a period not to exceed five years, and a fine of not more than $1,000.00. *See* R.C. 2929.24(A)(1); R.C. 2929.25(A)(1)(b); and R.C. 2929.28(A)(2)(a)(i). Because both findings of guilt have been upheld and a single sentence was imposed within these guidelines, a remand to the trial court will not change appellant's sentence. Therefore, appellant has not been prejudiced by the failure to object. *See Strickland v. Washington*, 466 U.S. 668 (1984), syllabus ("With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

{¶56} Appellant's fourth assignment of error has merit. Appellant's fifth assignment of error is not well taken.

{¶57} The judgment of the Portage County Municipal Court, Ravenna Division, is

16

affirmed in part and reversed in part. This matter is remanded for the state to elect which allied offense it wishes to pursue for sentencing purposes so that the trial court may issue a judgment entry accurately reflecting appellant's conviction and sentence.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.